512 P.2d 853

**SCOTTSDALE SCHOOL DISTRICT,**
Appellant,

v.

**Hugh F. CLARK, Clyde F. Kidd, R. P. Kiser, Horace N. Rieger, Lawrence Roth and Tracy Tripp, Appellees.**

**No. 1 CA–CIV 1744.**

Court of Appeals of Arizona,
Division 1,
Department B.

July 31, 1973.

Rehearing Denied Aug. 27, 1973.

Review Denied Oct. 9, 1973.

Lewis & Roca, by John P. Frank, Walter Cheifetz, P. Robert Moya and Mary M. Schroeder, Phoenix, for appellant.

Walter F. Kessler, Phoenix, for appellees.

HAIRE, Judge.

This is an appeal by the Scottsdale School District from a judgment entered against it in a breach of contract action. Each of the appellees had been employed by the appellant School District to serve in an administrative capacity in the Scottsdale school system for a two year period commencing July 1, 1969 and ending June 30, 1971. Except as to salary, the contracts of employment were identical, each containing a provision that the employee "hereby agrees to serve in the administrative posi-

tion to which he is assigned by the Board of Education or the Superintendent of Schools".

Each of the appellees was initially assigned a position as a principal. Subsequently, pursuant to evaluations of the performance of each individual appellee made by an assistant school superintendent, the superintendent of schools recommended to the Board of Education of the appellant school district that each of the appellees be given an "administrative transfer" to another position within the system for the second year of the two year contract. The appellees were each notified in advance that the transfer would be recommended to the Board, but they were not given in any detail the reasons for the recommended transfers.

The Board, on February 3, 1970, took action on the superintendent's recommendations. At the Board meeting the appellees were represented by their attorney, who requested that the Board postpone any action on the recommendations and that his clients be given a hearing on the merits of the proposed transfers. After hearing appellees' attorney, the Board denied his requests and approved the superintendent's recommendations, with the transfers to take effect in July 1970, for the second year of the two year contract. Although initially the transfer order provided that four of the appellees would assume positions as teachers and two as assistant principals, prior to the effective date of the transfers, administrative decisions resulted in each of the appellees being assigned to an administrative position as an assistant principal.

In this action no contention is made that appellees were not being paid the full amounts required by their contracts. Nor, in view of the above-quoted contractual

provision, is any argument advanced that the Board did not have the right to reassign the appellees to other administrative positions. Furthermore, no issue is raised as to the merits of the actual reasons for the transfers. The contention upon which appellees rest their claims for breach of contract is that the Board, *by its contracts with them,* placed certain procedural limitations upon the Board's right to reassign them to other administrative positions.

These claimed contractual limitations are not found in the written "Administrative Contract" executed by each of the appellees and the school district. Rather, appellees base their claimed rights on three other documents not referred to in the signed contract. It is our opinion that, as a matter of law, none of these documents gave contractual rights to appellees enforceable against the school district, and that therefore the trial court's judgment for the appellees must be reversed.

Two of the documents relied upon by the appellees relate to an agreement arrived at between *teacher* representatives and the Board. The first of these is a "Proposed Master Agreement" which received approval of the Board of Education on May 24, 1969, a date preceding the date of appellees' contracts.[1] Appellees rely upon a provision in this "Proposed Master Agreement" which reads in pertinent part as follows:

"Teachers shall not be . . . reduced in position . . . without just cause, and all information forming the basis for such disciplinary action will be made available to the teacher. . . ."

Appellees claim that this provision forms a part of their contracts as principals and that they had no advance information as to the basis for the Board's action on February 3, 1970.[2] Aside from the fact that the

---

1. These contracts state that they are "made this *16* day of *June,* 1969." However, the approval by the school district was dated much earlier, January 27, 1969.

2. The evidence shows that *subsequent* to the Board's adoption of the superintendent's

recommendations for transfers, and prior to the time the transfers were to become effective, the appellees were offered the opportunity to meet with the superintendent and to receive at that meeting "further information, which you state you desire". They were also offered the op-

provision relied upon does not require advance notice, it is our opinion that, as a matter of law, it does not form a part of appellees' contracts, and therefore the issue of its alleged breach should not have been submitted to the jury. The provision relied upon by appellees refers to "teachers", not to principals. It is found in an agreement which resulted from negotiations between representatives of teachers, not principals, and representatives of the Board; the agreement was approved by the Board at a meeting for the purpose of approving teachers' contracts, not principals' or administrators' contracts; the proposed agreement was submitted by ballot to classroom teachers for their approval, and not to principals or administrators. The proposed agreement required that in its final form it contain "a copy of the contract between the teacher and the Board" and "signatures of the Board and teacher representatives once the total document is accepted." By the terms of its adoption, the Proposed Master Agreement was to cover the 1969–70 school year, a period of one year only, the same as for teachers' contracts, and not a two year period as was the case in appellees' administrative contracts. In this connection it is very important to note that the form of contract subsequently entered into between the district and its classroom teachers expressly made such contracts subject to the terms of the Master Agreement negotiated between the teachers' representatives and the Board, utilizing the following language:

"Such services as agreed upon above are to be performed within the provisions of . . . the written agreement between the Board and the Classroom Teachers' Negotiation Commission made on the ——— day of May, 1969; said Agreement by reference being made a part hereof."

On the other hand the "Administrator's Contract" entered into between the school district and each of the appellees *contained no such provision.*

■ Appellees have presented evidence that during the negotiations between the teachers' representatives and the representatives of the Board relating to the proposed teachers' agreement, questions were raised concerning procedures applicable to administrative personnel. The evidence is very limited on this point, but in any event, given the factual context concerning the participants in the negotiations, the subsequent Board actions, the submission for approval to the teachers only, the express incorporation of the agreement in the teachers' contracts and the complete absence of any reference to it in appellees' contracts, the conclusion is inescapable that this mere collateral reference in negotiating sessions as to what may or may not be the applicable procedures insofar as concerns the rights of administrative personnel, cannot raise the provisions here involved to the status of a contractual obligation imposed against the school district vis-a-vis the appellees in their capacity as administrative personnel. There is no evidence that the negotiators were authorized to negotiate concerning contracts with administrative personnel. Furthermore, the evidence shows that the Board's negotiators were not authorized to bind the Board, and that the details of the negotiations were never presented to the Board.

■ A second document relied upon by appellees to support their claimed breach of contract is a handbook which apparently was developed as a result of the above-discussed "Proposed Master Agreement". This is referred to as the "Certificated Negotiations Policy and Handbook" and contains the identical provision quoted above from the Proposed Master Agreement. However, one among many additional provisions, found in this document which are not contained in the "Proposed Master

---

portunity to thereafter meet with the Board. Appellees refused to take advantage of the superintendent's offer, and therefore the record does not disclose the extent of the information which would have been released to them at such a meeting.

Agreement", is a definition of "teacher".[3] This handbook was not published and distributed until the Fall of 1969, well after appellees' contracts had been signed, and thus could not possibly be a part of their contracts. The discussions above concerning the factual background in the development of the Proposed Master Agreement are equally applicable to the provisions contained in the handbook. The evidence is clear that there was no intent to elevate the provision here relied upon to the status of a contractual provision binding upon the school district in its contract with the appellee-principals.

■ The third document relied upon by appellees is a pamphlet entitled "Policies and Criteria for the Approval of Secondary Schools". The court limited any claimed contractual rights flowing from this document to paragraph 2.96 thereof.[4] There is absolutely no evidence from which it could be concluded that this pamphlet formed a part of the contract between appellees and the school district. Further, the particular provision relied upon refers to "actions for dismissal". Here there were no "dismissals" involved. At the most, appellees were demoted or reduced in rank. Their contractual relationship with the school district was not severed or terminated, nor was their salary reduced in amount. Even if this provision were to be deemed a part of appellees' contracts, its language is unambiguous and did not raise any issue for submission to the jury.

■ At this point it is important to emphasize that appellees are not relying upon any rules or regulations which might have been promulgated by the Board pursuant to the provisions of A.R.S. § 15–441. Rather, appellees are attempting to raise to binding contractual status matters which clearly were not embraced within the terms of their written contracts. We do not agree with appellees' argument that the provisions in their written contracts requiring them "to perform those duties of administrator as required by law and the policies of the Board of Education" automatically gives contractual status to prior, or even future personnel assignment policies which the Board might, from time to time, adopt. The above-quoted contractual provision by its express terms imposes an obligation *upon the appellees* in the performance of administrative duties required to put into effect policies adopted, again from time to time, by the Board of Education in the performance of its statutorily mandated function as the governing body of the school district—policies which are not necessarily static, but rather changing with the changing needs of the school district. Having arrived at the conclusion that appellees' action for alleged breach of contract has no foundation in contractual obligation, we need not consider other serious questions raised by the school district concerning error in the submission of certain matters to the jury, and particularly errors concerning the standard of damages utilized in the submission of the damage issue to the jury.

The judgment is reversed with directions to enter judgment for the appellant school district.

JACOBSON, Chief Judge Division 1, and EUBANK, P. J., concur.

3. Section 4, page 3 of "Certificated Negotiations Policy and Handbook" defines "Teacher" or "Teachers" as follows:
   "Shall mean all of the certified teachers of the District and may include librarians, counselors and all members of both the teaching and administrative staffs."

4. Paragraph 2.96 reads in part as follows:
   "Certificated employees shall be kept informed of their status and in the event that the board contemplates *action for dismissal*, the employee affected shall be informed, in writing, and given an opportunity for a hearing before official action is taken by the board." (Emphasis added).